**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:

TOTAL MARKETING CONCEPTS,
INC.,

Debtor.

CASE NO.  6:20-bk-06544-LVV

CHAPTER 11

Emergency Hearing Requested on or before
Wednesday, December 16, 2020

_____/

## EMERGENCY MOTION TO PROHIBIT THE DEBTOR'S UNAUTHORIZED USE OF CASH COLLATERAL AND FOR ADEQUATE PROTECTION

### *(Emergency Hearing Requested)*

**BIG ELK FUNDING, LLC** ("Big Elk" or "Secured Creditor"), files this *Emergency Motion to Prohibit the Debtor's Unauthorized Use of Cash and For Adequate Protection* pursuant to 11 U.S.C. § 363(e) (the "Motion"). In support of this Motion, Big Elk states as follows:

### *Summary of Relief Requested*

Upon information and belief, the Debtor is operating its business and collecting revenues which constitute Big Elk's cash collateral. Despite the fact that this bankruptcy case was filed more than two weeks ago, Total Marketing Concepts, Inc. (the "Debtor" or "TMC") has not obtained authorization from Big Elk or moved this Court for permission to use cash collateral, as required by § 363(c)(2) of the Bankruptcy Code and Bankruptcy Rule 4001(b)(1). Instead, TMC continues to collect and use Big Elk's cash collateral without Court authorization while it ignores the rules of this Court and its obligations as a debtor-in-possession.

Because the Debtor continues to operate its business, and on information and belief, is receiving cash which it is using to pay employees and other operating expenses without a Court order, Big Elk believes that its cash collateral is being used without its permission and is in danger of diminution. The Debtor's failure to follow well-established bankruptcy procedures should

compel this Court to: (i) prohibit any further use of Big Elk's cash collateral by the Debtor, (ii) require the Debtor to account for all cash collateral received and used since the Petition Date, and (iii) award Big Elk adequate protection for any unauthorized use of cash collateral by the Debtor, as well as for any resulting diminution in value of Big Elk's collateral to date. Emergency relief is requested in order to prevent the further diminution of Big Elk's interest in the cash collateral identified herein.

## Factual and Procedural Background

### The TMC Loans

1.      On March 17, 2016, the Debtor and an affiliated entity (Reel Tyme Marketing Services, Inc., "Reel Tyme"), executed and delivered to Big Elk, a promissory note in the principal amount of Four Million Dollars and No Cents ($4,000,000.00) (the "Promissory Note").

2.      To secure payment under the Promissory Note, TMC and Reel Tyme executed that certain Mortgage, Assignment of Rents and Leases, Security Agreement and Fixture Filing (the "Security Agreement), a copy of which was recorded in Official Records Book 8652, Page 1377-1394 Public Records of Seminole County, Florida. The Security Agreement granted Big Elk a first priority security interest in substantially all of the Debtor's assets, including the Debtor's cash and cash equivalents.

3.      In connection with the Promissory Note, TMC and Reel Tyme also executed and delivered to Big Elk that certain Business Loan Agreement dated March 17, 2016, which document also contains a security agreement granting Big Elk a first priority lien on all personal property of the Debtor (the "Business Loan Agreement").

4.      To further perfect its security interest with respect to substantially all of the assets of TMC and Reel Tyme, on March 23, 2016, Big Elk filed UCC-1 Financing Statements (the "Financing Statements") with the Florida Secretary of State, which statements can be found at File

Nos. 201606931170 and 201606931162. (the Promissory Note, Security Agreement, Business Loan Agreement and Financing Statements are collectively referred to herein as the "Loan Documents" – where appropriate).

5.    On March 22, 2018, TMC executed and delivered to Big Elk, a promissory note in the principal amount of One Million Dollars and No Cents ($1,000,000.00 (the "Second Promissory Note").

6.    To secure payment of the Second Promissory Note, on March 22, 2018, TMC executed and delivered a Business Security Agreement in favor of Big Elk (the "Second Security Agreement").

7.    To further secure payment of the Second Promissory Note, Big Elk filed, or caused to be filed, a UCC-1 Financing Statement with the Florida Secretary of State, which statement can be found at File No. 201805147321 (the "Second UCC Financing Statement") (the Second Promissory Note, Second Security Agreement and Second UCC Financing Statement are collectively referred to herein as the "Second Loan Documents" – where appropriate).

### *The Foreclosure Lawsuit*

8.    On August 12, 2019, Big Elk commenced a lawsuit in Seminole County, Florida following TMC's default under the provisions of the Loan Documents and Second Loan Documents. In the lawsuit, Big Elk sought to foreclose its security interest in TMC's personal property and recover damages for its default under the terms of the Loan Documents and Second Loan Documents.

9.    On October 8, 2020, Big Elk obtained a final judgment against TMC for damages in the amount of $9,819,386.23. A true and correct copy of the Final Judgment is attached hereto as **Exhibit "A"**.

10.    TMC has not satisfied the final judgment which remains outstanding.

11.     In connection with its post-judgment collection efforts against TMC, Big Elk served a series of writs of garnishment to various banking institutions and parties indebted to TMC or in possession or control of TMC property. Under Florida law, "[s]ervice of a writ of garnishment creates a lien in or upon any debts or property at the time of service or at the time such debts or property come into the garnishee's possession or control." *See* Fla. Stat. § 77.06. Thus, upon service of writs of garnishment, Big Elk retained a security interest in any funds held by a garnishee or owed to TMC. See *In re Giles*, 271 B.R. 903 (Bankr. M.D. Fla. 2002).

### *The Reel Tyme and TMC Bankruptcy Cases*

12.     On November 10, 2020, Reel Tyme filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (*In re Reel Tyme Marketing Services, Inc.*, Case No. 6:20-bk-06280-LVV).

13.     Reel Tyme's Chapter 11 case was later dismissed on December 8, 2020 following Reel Tyme's failure to file its schedules, statement of financial affairs and case management summary.

14.     Interestingly, Reel Tyme sought and obtained a court order extending the period within which to file its required statements and schedules but neglected to file any such documents by the extended deadline or otherwise attempt to comply with basic debtor-in-possession requirements. It appears Reel Tyme's chapter 11 case was filed to solely to throw the proverbial wrench into Big Elk's collection efforts; although its short-lived experience before this Court did nothing more than highlight the bad acts Reel Tyme and TMC continue to engage in to the detriment of their creditors and estates.

15.     On November 25, 2020, TMC filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code (*In re Total Marketing Concepts, Inc.*, Case No: 6:20-bk-06544-LVV). Much like Reel Tyme, TMC has not filed (i) a case management summary; (ii) schedules; (iii) a

statement of financial affairs; (iv) an application to employ counsel; (v) a disclosure of compensation; or (vi) any first-day pleadings.

16.    While TMC has paid little attention to its Chapter 11 case or its obligations as a debtor in possession, it has been hard at work sending various turnover letters to the companies that had received Big Elk's garnishment writs. *See* Composite **Exhibit "B."** Upon information and belief, some of the companies contacted by TMC's bankruptcy counsel have even turned over funds[1] to TMC despite the absence of court order directing them to do so, and without any adequate protection provided for Big Elk's interest in such funds.

17.    In addition, upon information and belief, TMC's employees have been paid from garnished funds despite TMC's failure to file any motions to authorize the payment of employee or officer wages or the use of cash collateral. Thus, it appears TMC is attempting to use this Court, and the Bankruptcy Code, to strongarm garnishees into turning over Big Elk's cash collateral so that such funds can be used without Court authorization and in violation of the 11 U.S.C. § 363.

18.    Big Elk also reasonably believes that TMC is attempting to use this Court, and the Bankruptcy Code, to strongarm garnishees into turning over Big Elk's cash collateral so that such funds can be diverted to Targeted Results, LLC[2] upon dismissal of TMC's bankruptcy case, which case appears to be on the same path as the Reel Tyme case seeing that TMC has made no attempt to comply with any of its filing obligations.

### *Relief Requested*

19.    Big Elk respectfully requests that the Court enter an order: (a) prohibiting any further use of Big Elk's cash collateral by the Debtor; (b) requiring the Debtor to account for all

---

[1] Which funds are clearly Big Elk's cash collateral.

[2] An entity formed by TMC's current President, Mr. Chris Bonavita, two weeks prior to TMC's Chapter 11 filing. Targeted Results, LLC conducts business at the property owned by Reel Tyme and leased by TMC and share the same principal and mailing address as TMC. The timing of the formation of Targeted Results, LLC and the filing of the Reel Tyme and TMC bankruptcy cases is suspect at best.

cash collateral collected and used since the Petition Date; and (c) awarding Big Elk adequate protection for the Debtor's use of cash collateral and any resulting diminution in value of the collateral since the petition date, including allowing Big Elk, or its authorized representatives to inspect the Debtor's books and records.

20.    As set forth above, Big Elk holds properly perfected liens in the Debtor's personal property, including, but not limited to, the Debtor's cash and cash equivalents.

21.    Section 363(e) of the Bankruptcy Code and Bankruptcy Rule 4001(a)(1) permit a party with an interest in cash collateral to move the court to prohibit the use of cash collateral. 11 U.S.C. § 363(e); Fed. R. Bankr. P. 4001(a)(1). This Court should prohibit the Debtor's use of cash collateral because, among other things, the Debtor has inexcusably failed to relate to Big Elk its intentions for the cash collateral, provide a budget outlining the Debtor's income and expenses, properly file a motion with this Court seeking authorization to use cash collateral, or make a showing that it has properly accounted for and segregated the cash collateral. Such actions - or rather, inactions on the part of the Debtor – require this Court to ensure that the Debtor does not improperly and impermissibly use the cash collateral and deplete Big Elk's interest in its collateral.

22.    Big Elk has not consented to, has not been asked to consent to, and does not consent to the Debtor's use of cash collateral. Big Elk's counsel has copied Debtor's counsel on emails communicating that Big Elk does not consent to the Debtor's use of cash collateral. Nevertheless, the Debtor has failed to file any motion requesting authorization to use cash collateral in its bankruptcy case and continues to operate its business with the use of Big Elk's collateral without its consent or court authorization. Given that the Debtor's operations are ongoing, and on information and belief, the Debtor continues to receive and fund operations with cash, the status of cash collateral while in the hands of the Debtor is of paramount concern to Big Elk. The Court should prohibit cash collateral usage seeing that Big Elk does not consent to Debtor's use of cash

collateral and the Debtor has failed to show that it can provide the mandatory protection for Big Elk's interest.

23.     Moreover, in the absence of authorization to use cash collateral, a debtor is under a strict obligation to segregate and account for all cash collateral. *See* 11 U.S.C § 363(c)(4). The Debtor's failure to provide an accounting of the receipt of Big Elk's cash collateral, and proof of segregation of same, constitutes a failure to comply with the most basis and rudimentary requirements of a debtor-in-possession under the Bankruptcy Code and the Bankruptcy Rules. As such, it is crucial that this Court order the Debtor to account for its use and receipt of cash collateral, especially where, as here, the parties in control of the Debtor are affiliated with a recently formed entity which appears to be set up to operate as the Debtor's alter-ego.

24.     To the extent Big Elk may be unable to fully recover any cash collateral consumed by the Debtor during the pendency of this case, Big Elk should be awarded a super-priority administrative claim. Big Elk requests that any such claim be granted priority over all other administrative claims of any kind against the Debtor's estate.

25.     To the extent Big Elk may be unable to fully recover, through the liquidation of property encumbered by Big Elk's liens, or through the payment of a super-priority administrative claim, any cash collateral consumed by the Debtor during the pendency of this case; Big Elk reserves its right to seek additional relief from this Court, including reimbursement to Big Elk through the imposition of monetary sanctions against those person in control of the Debtor, as a result of the Debtor's unauthorized use of cash collateral.

**WHEREFORE**, Big Elk respectfully requests that the Court grant the relief requested in this Motion, enter an order prohibiting the Debtor's use of cash collateral, require the Debtor to provide Big Elk's with adequate protection and an accounting of its use, receipt, and segregation of Big Elk's cash collateral since the petition date, and require the Debtor to provide Big Elk, or

its authorized representatives access to inspect the Debtor's books and records, and such other and

further relief which this Court deems appropriate.

     **RESPECTFULLY SUBMITTED** this 10th day of December 2020.

/s/ Daniel A. Velasquez

Justin M. Luna, Esq.

Florida Bar No. 0984469

jluna@lathamluna.com

Daniel A. Velasquez, Esq.

Florida Bar No. 0098158

dvelasquez@lathamluna.com

**LATHAM, LUNA, EDEN & BEAUDINE, LLP**

bknotice1@lathamluna.com

111 N. Magnolia Ave., Suite 1400

Orlando, Florida 32801

Telephone: (407) 481-5800

Facsimile: (407) 481-5801

*Attorneys for Big Elk Funding, LLC*

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

In re:

CASE NO.  **6:20-bk-06544-LVV**

**TOTAL MARKETING CONCEPTS,**
**INC.,**

**CHAPTER 11**

Debtor.

_____/

**CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that on the 10th day of December 2020, a true copy of the foregoing has been furnished either electronically and/or by U.S. First Class, postage prepaid mail to: Total Marketing Concepts, Inc., **c/o Aldo G. Bartolone, Jr., Esq.**, Bartolone Law, PLLC, 1030 N. Orange Avenue, Suite 300, Orlando, Florida 32801, aldo@bartolonelaw.com; all parties listed on the 1007-2 Parties-in-Interest list; all parties who receive notice via CM/ECF in the ordinary course; **Miriam G. Suarez, Esq.**, Office of the United States Trustee, 400 W. Washington Street, Suite 1100, Orlando, Florida 32801, Miriam.g.suarez@usodj.gov.

                             /s/ Daniel A. Velasquez
                             Daniel A. Velasquez, Esq.

Label Matrix for local noticing
113A-6
Case 6:20-bk-06544-LVV
Middle District of Florida
Orlando
Thu Dec 10 17:44:48 EST 2020

Amos Financial LLC
3330 Skokie Valley Rd.
Suite 301
Highland Park, IL 60035-1044

Amos Financial, LLC
c/o Kelley, Fulton & Kaplan, PL
1665 Palm Beach Lakes Blvd., Ste 1000
West Palm Beach, FL 33401-2109

Big Elk Funding LLC
c/o Corporation Trust Co.
1209 Orange Street
Wilmington, DE 19801-1120

Big Elk Funding, LLC
c/o Justin M. Luna, Esq.
Latham, Luna, Eden & Beaudine, LLP
111 N. Magnolia Avenue, Suite 1400
P.O. Box 3353 (32802)
Orlando, FL 32802-3353

Broadband Dynamics, LLC
c/o S. Douglas Knox
Spencer Fane LLP
201 N. Franklin St., Suite 2
Tampa, FL 33602-5182

Discount Long Distance LLC
4775 South Durango Drive
Las Vegas, NV 89147-8157

Global Telecom & Technology
7900 Tysons One Place
Suite 1450
Mc Lean, VA 22102-5973

Hays U.S. Corporation
4350 W. Cypress St.
Suite 1000
Tampa, FL 33607-4247

Internal Revenue Service
Post Office Box 7346
Philadelphia PA 19101-7346

KW Call Center Services LLC
1019 1/2 Tower Avenue
Superior, WI 54880-1599

Kent Weaver
c/o Ivan K. Mathew, P.C.
6245 N. 24th Parkway
Phoenix, AZ 85016-2024

Matthew Dickson
c/o Broderick & Paronich PC
99 High St.
Suite 304
Boston, MA 02110-2330

Paychex, Inc.
911 Panorama Trail South
Rochester, NY 14625-2396

Paycor, Inc.
4811 Montgomery Rd.
Cincinnati, OH 45212-2163

Preeminent Security, LLC
15055 Evergreen Oak Loop
Winter Garden, FL 34787-6423

System Tech Services, Inc.
851 Central Park Drive
Sanford, FL 32771-6602

Underguard Teleservices, LLC
787 US-51
Suite 3
Ripley, TN 38063

End of Label Matrix
Mailable recipients     17
Bypassed recipients      0
Total                   17

# EXHIBIT "A"

Filing # 114672888 E-Filed 10/08/2020 03:04:53 PM

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR SEMINOLE COUNTY, FLORIDA

BIG ELK FUNDING, LLC, a Delaware limited
liability company,

      Plaintiff,

v.                                CASE NO:  2019-CA-002536

TOTAL MARKETING CONCEPTS, INC.,
FLORIDA COMMUNITY BANK, N.A.,
XEROX FINANCIAL SERVICES, LLC,
QUEEN FUNDING, LLC, BUSINESS
ADVANCE, LLC, CORPORATION SERVICE
COMPANY, AS REPRESENTATIVE,
AFFILIATED FUNDING CORPORATION,
CAPSTONE CREDIT, LLC, DISCOUNT
LONG DISTANCE, LLC, SOUTHERN
NEVADA FINANCE, LLC, INTERNAL
REVENUE SERVICE, BROADBAND
DYNAMICS, LLC, STATE OF FLORIDA
DEPARTMENT OF REVENUE, GTR SOURCE
LLC,

      Defendants.

_____/

## FINAL SUMMARY JUDGMENT
## (COUNTS I AND II OF AMENDED VERIFIED COMPLAINT)

    THIS CAUSE came before the Court on September 30, 2020 at 9:30 a.m. upon the

*Motion for Final Summary Judgment (Counts I and II)* (the "Motion") filed by Plaintiff, Big

Elk Funding, LLC, a Delaware limited liability company ("Big Elk").  The Court, having

reviewed the Motion and the pleadings filed herein, heard argument of Plaintiff's counsel,

noting that Defendant has consented to the relief requested in the Motion, and being otherwise

fully advised in the premises, finds that there is no genuine issue of any material fact and that

Big Elk is entitled to final summary judgment against Defendant, Total Marketing Concepts,

Inc. ("TMC"), on Counts I and II of Big Elk's Amended Verified Complaint as a matter of law.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1.      The Motion is GRANTED.

2.      Plaintiff, Big Elk Funding, LLC, a Delaware limited liability company, whose address is 11142 E. Tamarisk Way, Scottsdale, Arizona 85262, shall recover from Defendant, Total Marketing Concepts, Inc., a Florida corporation, whose address is 1043 Upsala Road, Sanford, Florida 32771, the sum of[1]:

| | |
|---|---|
| Principal Due on the Note | $4,000,000.00 |
| Principal Due on the Second Note | $1,000,000.00 |
| Expense Advances | $1,976,914.71 |
| Interest to the date of this Judgment ($4,007.09 per diem) | $2,842,471.52 |
| **Total** | **$9,819,386.23** |

that shall bear interest at the rate of 5.37% per annum from the date hereof, for which total sum let execution issue.

3.      In addition, TMC shall complete under oath the required *Florida Rule of Civil Procedure* Form 1.977(b) (Fact Information Sheet), which is attached hereto as Composite **Exhibit "A,"** and serve it on Big Elk's attorney within forty-five (45) days from the date of this Final Summary Judgment, unless this Judgment is satisfied or post-judgment discovery is stayed.

---

[1] This sum does not include an award of Big Elk's attorneys' fees and costs. However, as indicated in Paragraph 4 below, the Court reserves jurisdiction to entertain a timely motion by Big Elk seeking its attorneys' fees and costs pursuant to Rule 1.525, *Florida Rules of Civil Procedure.*

4.     Jurisdiction of this case and over the parties is retained to enter further orders that are proper, including, without limitation: (a) an order awarding Big Elk its attorneys' fees and costs pursuant to Rule 1.525, *Florida Rules of Civil Procedure*; and (b) an order compelling TMC to complete Form 1.977(b); and (c) all post-judgment orders as may be appropriate.

**ORDERED and ADJUDGED** on this Thursday, October 8, 2020

59-2019-CA-002536 10/08/2020 10:56:42 AM

Jessica Recksiedler, Circuit Judge
59-2019-CA-002536 10/08/2020 10:56:42 AM

Copies have been furnished via the Florida Courts E-filing portal to the following:

MARC L LEVINE
mlevine@lathamluna.com
sgarcia@lathamluna.com

HARLEY  STORRINGS
harley@storringslaw.com
greg@storringslaw.com
assistant@storringslaw.com

LARA ROESKE FERNANDEZ
lfernandez@trenam.com
mmosbach@trenam.com
mwoods@trenam.com

XEROX FINANCIAL SVC LLC
45 GLOVER AVENUE, SUITE 7033D
P.O. BOX 4505
NORWALK, CT 06856

QUEEN FUNDING LLC
2221 NE 164TH STREET
MIAMI BEACH, FL 33160

BUSINESS ADVANCE LLC
128 32ND STREET
BROOKLYN, NY 11232

CORPORATION SVC CO
801 ADIAL STEVENSON DRIVE
SPRINGFIELD, IL 62703

AFFILIATED FUNDING CORP
P.O.  BOX 711537
SALT LAKE CITY, UT 8417

CAPSTONE CREDIT LLC
810 7TH AVENUE, FLOOR 27
NEW YORK, NY

JOHN M BRENNAN JR
jack.brennan@gray-robinson.com
andrea.taylor@gray-robinson.com

INTERNAL REVENUE SVC

BROADBAND DYNAMICS LLC

3

950 PENNSYLVANIA AVENUE,
NW
U.S. DEPARTMENT OF JUSTICE
WASHINGTON, DC

8757 E. VIA DE COMMERCIO
SCOTTSDALE, AZ

STATE OF FL DEPT OF REVENUE
400 W. ROBINSON STREET, SUITE
N302
ORLANDO SERVICE CENTER
ORLANDO, FL

KRISTEN M CRESCENTI
kcrescenti@bitman-law.com
drod@bitman-law.com

KIMBERLY HELD ISRAEL
kisrael@mcglinchey.com
jglus@mcglinchey.com

Andrew Fulton, IV IV
eservice@kelleylawoffice.com

Camara A. Williams Williams
cwilliams@swtglaw.com
camara.williams@gmail.com
cwilliams@swtglaw.com

Divinne Joseph Smith
divinne@dbjosephfirm.com

Daniel Anthony Velasquez
dvelasquez@lathamluna.com
bknotice1@lathamluna.com
lvanderweide@lathamluna.com

J Kirby McDonough
kmcdonough@spencerfane.com
ecoutu@spencerfane.com

Justin M Luna
jluna@lathamluna.com
bknotice1@lathamluna.com
lvanderweide@lathamluna.com

Kelly McKenna
kpmckenna@capstoneclg.com

Paycor, Inc.
kcrescenti@bitman-law.com
drod@bitman-law.com

Miriam Rosenblatt
miriam.rosenblatt@mhllp.com
kathryn.craven@mhllp.com
mrosenblatt22@gmail.com

William Thomas
william.thomas@mhllp.com

4

## EXHIBIT "A"

## FORM 1.977 (b) FACT INFORMATION SHEET
## FOR CORPORATIONS AND OTHER BUSINESS ENTITIES

Name of entity: ..................................................................................................................................

Name and title of person filling out this form: ...................................................................................

Telephone number: ............................................................................................................................

Place of business: ..............................................................................................................................

Mailing address (if different): ............................................................................................................

Gross/taxable income reported for federal income tax purposes last three years:

$_____/$_____  $_____/$_____  $_____/$_____

Taxpayer identification number: ........................................................................................................

Is this entity an S corporation for federal income tax purposes? _____ Yes _____ No

Average number of employees per month _____

Name of each shareholder, member, or partner owning 5% or more of the entity's common stock, preferred stock, or other equity interest:

.............................................................................................................................................................

.............................................................................................................................................................

.............................................................................................................................................................

Names of officers, directors, members, or partners: .........................................................................

.............................................................................................................................................................

Checking account at: _____ Account # _____

Savings account at: _____ Account # _____

Does the entity own any vehicles? _____ Yes _____ No

For each vehicle please state:

Year/Make/Model: _____ Color: ...............................................................................

Vehicle ID No: _____ Tag No: _____ Mileage: _____

Names on Title: _____ Present Value: $_____

Loan Owed to: ...........................................................................................................................

Balance on Loan: $_____

Monthly Payment: $_____

Does the entity own any real property?
_____ Yes _____ No

If yes, please state the address(es): .........................................................................................

...................................................................................................................................................

Please check if the entity owns the following:

_____ Boat

_____ Camper

_____ Stocks/bonds

_____ Other real property

_____ Other personal property

Please attach copies of the following:

1. Copies of state and federal income tax returns for the past 3 years.

2. All bank, savings and loan, and other account books and statements for accounts in institutions in which the entity had any legal or equitable interest for the past 3 years.

3. All canceled checks for the 12 months immediately preceding the service date of this Fact Information Sheet for accounts in which the entity held any legal or equitable interest.

4. All deeds, leases, mortgages, or other written instruments evidencing any interest in or ownership of real property at any time within the 12 months immediately preceding the date this lawsuit was filed.

5. Bills of sale or other written evidence of the gift, sale, purchase, or other transfer of any personal or real property to or from the entity within the 12 months immediately preceding the date this lawsuit was filed.

2

6. Motor vehicle or vessel documents, including titles and registrations relating to any motor vehicles or vessels owned by the entity alone or with others.

7. Financial statements as to the entity's assets, liabilities, and owner's equity prepared within the 12 months immediately preceding the service date of this Fact Information Sheet.

8. Minutes of all meetings of the entity's members, partners, shareholders, or board of directors held within 2 years of the service date of this Fact Information Sheet.

9. Resolutions of the entity's members, partners, shareholders, or board of directors passed within 2 years of the service date of this Fact Information Sheet.

UNDER PENALTY OF PERJURY, I SWEAR OR AFFIRM THAT THE FOREGOING ANSWERS ARE TRUE AND COMPLETE.

_____
Judgment         Debtor's         Designated
Representative/Title

STATE OF FLORIDA

COUNTY OF _____

The foregoing instrument was acknowledged before me on _____(DATE), by _____, who is personally known to me or has produced _____as identification and who _____ did/did not _____ take an oath.

WITNESS my hand and official seal, this _____ day of _____, 2020.

_____
Notary Public
State of Florida

My Commission expires: _____

THE JUDGMENT DEBTOR SHALL FILE WITH THE CLERK OF THE COURT A NOTICE OF COMPLIANCE AFTER THE ORIGINAL FACT INFORMATION SHEET, TOGETHER WITH ALL ATTACHMENTS, HAS BEEN DELIVERED TO THE JUDGMENT CREDITOR'S ATTORNEY, OR TO THE JUDGMENT CREDITOR IF THE JUDGMENT CREDITOR IS NOT REPRESENTED BY AN ATTORNEY.

3

# COMPOSITE EXHIBIT "B"



November 25, 2020

**Re:    Notice of Bankruptcy**
**        Total Marketing Concepts, Inc.**
**        Case No. 6:20-bk-06544**

To whom it may concern (Fifth Third Bank Accounts xxxx-xx-0517, xxxx-xx-7234):

Please be advised that this law firm represents Total Marketing Concepts, Inc. in its Chapter 11 bankruptcy case that was filed on November 25, 2020 in the United States Bankruptcy Court for the Middle District of Florida.

A careful review of the Debtor's books and records indicates that you currently have outstanding amounts owed to them.  Pursuant to the provisions of 11 U.S.C. § 542(a), we hereby demand that you turnover to the Debtor all monies withheld within ten (10) days from receipt of this letter.

If you are holding any money pursuant to a writ of garnishment issued and served prior to the bankruptcy filing, that money must be forwarded to the Debtor, and you must not hold any further funds pursuant to such writ.  Pursuant to 11 U.S.C. § 362(a), all collection efforts against the Debtor have been stayed and, therefore, you are not permitted to honor the writ of garnishment at this time.

Thank you for your time and attention to this matter.  If you have any questions, please do not hesitate to contact my office.

Sincerely,

*Aldo G. Bartolone, Jr.*

Aldo G. Bartolone, Jr.

AGB/jl

**From:** Katie Bartoo <Katie.Bartoo@nelsonmullins.com>
**Sent:** Monday, November 30, 2020 11:56 AM
**To:** Chris Bonavita <chris@thetmcteam.com>; Erica Barahona <Erica.Barahona@nelsonmullins.com>; Mike Wilson <Mike.Wilson@nelsonmullins.com>
**Cc:** Justin Luna <jluna@lathamluna.com>; Marc Levine <mlevine@lathamluna.com>
**Subject:** FW: TOTAL MARKING CONCEPTS - TMC Chapter 11, Turnover letter - Fifth Third Bank accts xxxx-xx-0517, xxxx-xx-7234 - owed Funds to TMC
**Importance:** High

Chris:

Fifth Third Bank would need either a court order to release these funds back to the customer or a dismissal of the Writ from the plaintiff in the State court action.  We cannot turn over funds being held solely by the filing of a bankruptcy action.   If one of these items exists, please forward.  Otherwise, please obtain one of these 2 items and Fifth Third will take action accordingly.

Thanks,
Katie

KATHRYN "KATIE" BARTOO, FRP, CAPM©, PMP©
CERTIFIED PROJECT MANAGER AND PARALEGAL
katie.bartoo@nelsonmullins.com
390 NORTH ORANGE AVENUE | SUITE 1400
ORLANDO, FL 32801
T 407.481.5220   F 407.425.8377
NELSONMULLINS.COM

**From:** Chris Bonavita <chris@thetmcteam.com>
**Sent:** Monday, November 30, 2020 11:16 AM
**To:** Mike Wilson <Mike.Wilson@nelsonmullins.com>; Katie Bartoo <Katie.Bartoo@nelsonmullins.com>; Erica Barahona <Erica.Barahona@nelsonmullins.com>
**Subject:** TMC Chapter 11, Turnover letter - Fifth Third Bank accts xxxx-xx-0517, xxxx-xx-7234 - owed Funds to TMC

◄**External Email**► - From: chris@thetmcteam.com

Please find attached the notice of Total Marketing Concepts Chapter 11 filing and Turnover request for previously held funds.

Please remit all withheld funds at your earliest convenience by bank wire if at all possible.

Total Marketing concepts Inc
**Debtor-In-Possession**
**Case No.** 20-06544

Wire Bank Number 042000314

Routing Number (ACH): 067091719
Account Number: 7435094367
Bank: Fifth Third Bank
Bank Address: 38 Fountain Square Plaza
Bank City: Cincinnati, OH 45263

Best regards,

Chris Bonavita
chris@thetmcteam.com

**CONFIDENTIALITY NOTICE**: This email and any data files transmitted with it are the property of Total Marketing Concepts, Inc. and intended to be kept strictly confidential and solely for the purpose and use of the intended recipients. Any improper use, dissemination, distribution or copying of confidential information contained within the email or any attachment is strictly prohibited. If you have received this email in error please notify the sender immediately and delete the email and its attachment(s), without viewing, completely from your computer system.

**CONTRACT DISCLAIMER**: This email is not intended to be a contract. Any negotiations between the parties to this email relating the provision of services by Total Marketing Concepts, Inc. are subject to the parties' final written contract.

**VIRUS SECURITY**: Neither Total Marketing Concepts, Inc. nor the Sender of this email make any warranties, expressed or implied, as to the completeness or accuracy of any information contained herein, or that this electronic communication (or its attachments) is free of viruses. The recipient of this email must ensure that the email and attachments are virus free and TMC accepts no responsibility for any loss or damage arising in any way from its use

Nelson Mullins is continuing to monitor developments related to COVID-19, including guidance from the Centers for Disease Control and various health officials; and federal, state, and local government authorities. The firm has implemented precautionary measures and plans to ensure the continuation of all firm services to clients from both in office and remote work arrangements across our 25 geographically disperse offices. Click here to visit the Nelson Mullins Coronavirus Resources page. Information described therein is subject to change.

**Confidentiality Notice**
This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately either by phone (800-237-2000) or reply to this e-mail and delete all copies of this message.

Total Control Panel                                                                 Login

To: mlevine@lathamluna.com
From: katie.bartoo@nelsonmullins.com

*You received this message because the domain nelsonmullins.com is on the enterprise allow list. Please contact your administrator to block messages from the domain nelsonmullins.com*