**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| **In re:** | **CASE NO.: 6:20-bk-06544-LVV** |
| **TOTAL MARKETING CONCEPTS, INC.,** | **CHAPTER 11** |
| Debtor. | |
| _____/ | |

## BIG ELK'S RESPONSE TO DEBTOR'S MOTION FOR NEW TRIAL OR RECONSIDERATION OF ORDER CONVERTING CASE TO CHAPTER 7

**Big Elk Funding, LLC** ("Big Elk"), by and through undersigned counsel, and pursuant to the Court's Order Directing Response and Scheduling Preliminary Hearing (Doc. No. 81), hereby files this response to Debtor's Motion for New Trial or Reconsideration of Order Converting Case to Chapter 7 (Doc. No. 77), and in support states as follows:

### RELEVANT BACKGROUND AND PROCEDURAL HISTORY

1. On November 25, 2020, Total Marketing Concepts, Inc. ("TMC" or "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court.

2. This case initially came before the Court on December 17, 2020 for a hearing (the "December 17 Hearing") on Debtor's Motion to Extend Deadlines to File Schedules and Statements of Intentions and Other Required Documents (Doc. No. 15) and Big Elk's Emergency Motion to Prohibit Use of Cash Collateral (Doc. No. 16).

3. For the reasons stated orally at the December 17 Hearing, the Court issued TMC an Order to Show Cause why the Case Should not be Converted to Chapter 7 or a Chapter 11 Trustee Should not be Appointed ("Order to Show Cause") (Doc. No. 28).

4. The Court heard the Order to Show Cause on January 7, 2020 (the "January 7 Hearing").

5. The Court found cause exists to convert this case to a Chapter 7 and entered an Order Converting Case to Chapter 7 ("Order") (Doc. No. 63).

6. As a result, Debtor filed its Motion for New Trial or Reconsideration of Order Converting Case to Chapter 7 ("Motion") (Doc. No. 77). The Court directed any interested party to file a response to the Motion, if desired, by February 5, 2021.

7. Debtor requests a new trial or reconsideration "in order to correct a clear error or prevent manifest injustice as a result of the Court relying upon false information." Debtor appears to attach new potential evidence to the Motion.

8. Debtor alleges Big Elk knowingly made false statements on the record at the December 17 Hearing and at the January 7 Hearing, which materially contributed to the basis for converting this case to Chapter 7. Currently, Debtor has not provided a transcript of either hearing specifying which statements it believes are false.

9. Debtor attached three Exhibits to the Motion: an email chain from November 2019 ("Exhibit A"), an email chain from April 2020 ("Exhibit B"), and a check made out to Big Elk Funding, LLC signed by Michael Nealer from April 2020 ("Exhibit C") (collectively, the "Exhibits"). Additionally, the Motion is dependent on the Affidavit of Andrew Dorko, Jr., which Debtor intended to attach as Exhibit D. Although, the Affidavit of Andrew Dorko, Jr. is conspicuously absent from the Motion. Debtor has not supplemented the Motion to provide the Affidavit of Andrew Dorko, Jr.

10. Jeremiah Foster ("Foster"), the former court-appointed Receiver for TMC, filed a Response to Debtor's Motion (Doc. No. 86). In essence, Foster contends Debtor's Motion is

incomplete, confusing, and obscure. Foster is critical of Debtor's attempt to blur the line between the actions of Kelly McKenna and Foster, two different court-appointed receivers.

11. Amos Financial, LLC ("Amos") also filed a Response in Opposition to Debtor's Motion (Doc. No. 87). Amos vehemently opposes Debtor's Motion. Amos contends, among other things, "Debtor has done nothing more than make mere assertions rehashing arguments that were brought or could have brought on January 7, 2021" and "Debtor has failed [to] explain, nor could it explain, how the Court's finding that the Debtor did not have a realistic ability to reorganize somehow constitutes a manifest error or law or fact or gives rise to extraordinary circumstances."

12. Finally, Emerson C. Noble, Chapter 7 Trustee ("Trustee"), filed a Response to Debtor's Motion (Doc. No. 88). Trustee stated he presently has little documentation, other than from pleadings filed in this case and general telephone conversations with parties in interest, to either hold the 11 U.S.C. § 341(a) Meeting of the Creditors scheduled for February 10, 2021 or administer the Chapter 7 case, but is ready to administer the case to the best of his abilities in the event the Court denies Debtor's Motion.

## **LEGAL STANDARD**

13. A motion for a new trial or reconsideration must demonstrate plausible grounds why the court should reexamine its prior decision, and the movant must set forth facts or law "of a strongly convincing nature" to reverse a prior decision.[1]

14. A motion for a new trial or reconsideration is an extraordinary remedy to be employed sparingly "due to interests in finality and conservation of judicial resources.[2]

---

[1] *In Re Environcon Intern. Corp.*, 218 B.R. 978, 979 (Bankr. M.D. Fla. 1998).
[2] *Mathis v. United States (In re Mathis)*, 312 B.R. 912, 914 (Bankr. S.D. Fla. 2004) (quoting *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994)) (internal quotation marks omitted). Federal Rule of Civil Procedure 59 is incorporated into the Bankruptcy Code by Federal Rule of Bankruptcy Procedure 9023.

15. "A motion for reconsideration addresses only factual and legal matters that the Court may have overlooked. It is improper on a motion for reconsideration to ask the Court to rethink what it has already thought – rightly or wrongly."[3]

16. Far too often, litigants operate under the assumption that any adverse ruling confers on them a license to move for reconsideration and utilize such platform to relitigate issues that have already been decided or otherwise seek a "do over."[4]

17. Where courts have granted reconsideration, they act to: (1) account for an intervening change in controlling law, (2) consider newly available evidence, and (3) correct clear error or prevent manifest injustice.[5]

18. To obtain a trial on newly discovered evidence, the movant must establish that (1) evidence was discovered after trial, (2) the movant's failure to discover the evidence was not due to a lack of diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material, and (5) the evidence is such that a new trial would probably produce a different result.[6] The common denominator in each of these factors is that the newly discovered information constitutes admissible evidence.[7]

## ARGUMENT

19. Debtor fails to demonstrate a new trial or reconsideration will correct clear error or prevent manifest injustice in converting this bankruptcy case to a Chapter 7. Debtor makes numerous broad accusations about Big Elk that could have been argued at the January 7 Hearing. Debtor now seeks a second bite at the apple. The accusations in Debtor's Motion are not only inappropriate at this

---

[3] *D'Angelo v. Parker (In re Parker)*, 378 B.R. 365, 371 (Bankr. M.D. Fla. 2007)(internal citations omitted).
[4] *In re Zalloum*, Case No. 6:13-bk-04030-KSJ, 2017 WL 1733503 (Bankr. M.D. Fla. 2017).
[5] *In re Mathis*, 312 B.R. at 914 (internal citations omitted).
[6] *United States v. Gates*, 10 F.3d 765, 767 (11th Cir. 1993)(*modified*, 20 F.3d 1550 (11th Cir. 1994)).
[7] *United States v. Spellissy*, Case No. 8:05-CR-475-T-27TGW, 2009 WL 10741367 at *2 (M.D. Fla. 2009).

procedural posture but are simply untrue. Debtor is attempting to paint Big Elk in a bad light with no real factual support.

20. As an initial matter, none of the Exhibits should be considered with the Motion as the Exhibits do not constitute "newly available evidence." All three Exhibits predate this bankruptcy filing by at least eight months. Debtor makes no allegations that it discovered the Exhibits after the January 7 Hearing or that this evidence would produce a different result at a new trial. To the contrary, the Debtor's witnesses testified having such emails in their possession at the January 7 Hearing, but failed to introduce them into evidence. To the extent the Court wishes to consider the Exhibits, Debtor mischaracterizes what the Exhibits truly represent.

21. Debtor contends Big Elk made repeated knowingly false statements at the December 17 Hearing and at the January 7 Hearing which induced this Court to convert the case to a Chapter 7. Debtor does not include a transcript from either hearing with specific language Debtor believes is false.[8] Debtor, instead, speaks in generalities. It is difficult to understand how a new trial or reconsideration will correct a clear error or prevent manifest injustice when the Debtor cannot specify what statements caused the clear error or manifest injustice.

22. In any event, Debtor identifies several general statements made by Big Elk that Debtor believes are false including:

> a. "During the [December 17 Hearing and January 7 Hearing] Big Elk Funding, LLC casually tossed around claims of fraud with regard to the filing for the PPP Loan Application with Fifth Third Bank during the period under Receivership. In particular, the false statements and arguments claim TMC without authority

---

[8] Debtor states that as of the writing of the Motion, Debtor is without the benefit of having the transcripts in hand, however, Debtor ordered the transcripts. Debtor has had almost two months to order the transcripts from the December 17 Hearing and almost one month to order transcripts from the January 7 Hearing. Neither transcript has been provided.

filed for the PPP Loan. TMC finds such allegations without merit, in bad faith, and intended to create a false impression of the facts and circumstances surrounding TMC giving rise to requesting relief under Chapter 11. In filing the PPP Loan Application, TMC acted at the direction of Big Elk, Michael Nealer ("Nealer"), and Premier Strategy Group, LLC ("Premier"), with full authority of the Receiver. Importantly, Big Elk, Nealer, and Premier directed TMC to use Radix Law from Phoenix Arizona to complete and file the TMC PPP Application."

b. "On the record at the December Hearing, Big Elk Attorney claims, 'my client has not received a dime in six years.' This is untrue. In addition to the $62,901.42 received on or about April 23, 2020, Big Elk received payments in excess of One Million Five Hundred Thousand Dollars during the term of the Big Elk Loan."

c. "Big Elk also falsely claims at the December Hearing that prior to the receivership, TMC did not identify or provide Big Elk with the alternatives to refinancing and recapitalizing TMC. This statement is untrue. As stated previously on the record, in July, 2019, Dorko interviewed a number of prospective capital partners to join forces with Debtor, refinance or pay off Big Elk Loans, and properly capitalize Debtor operations. Big Elk and Big Elk Affiliate Premier fully participated in the process."

23. Again, Debtor could have argued any of these issues at the January 7 Hearing. If Debtor really believed Big Elk made false statements at the December 17 Hearing, Debtor could have challenged those allegedly false statements during the January 7 Hearing. It is inappropriate to either re-argue or present these issues for the first time on a motion for a new trial or

reconsideration. Nonetheless, Debtor's allegations are incorrect and do not affect the crux of why this Court converted this case from Chapter 11 to Chapter 7.

24. First, it has been established TMC applied for a PPP Loan without the authority of the court-appointed receiver. Debtor attaches Exhibit A to somehow prove Big Elk appointed Michael Nealer and Premier to run TMC operations during some un-specified receivership period when the email merely demonstrates Big Elk stepped up to provide funding so TMC could continue operating beyond November 2019. In reality, Andrew Dorko Jr., as the sole shareholder and director of TMC, appointed Nealer to operate TMC. *See* Big Elk's **Exhibit A** attached to this Response.

25. Debtor also attaches Exhibit B to the Motion to somehow prove that Big Elk authorized and directed TMC to file the PPP Application through the Radix Law Firm when the email merely demonstrates Big Elk supported TMC's decision to get a PPP Loan if TMC qualified. The email does not evidence any wrongdoing by Big Elk.

26. Second, Big Elk did receive the check attached to the Motion as Debtor's Exhibit C for $62,901.48, but Debtor mischaracterizes the purpose of the check. Big Elk previously purchased personal property (such as computer equipment) for TMC. The monies represent a refund of such expenses, not on the loan itself, that TMC agreed to pay to Big Elk. Disregarding the true purpose of the monies, Debtor fails to articulate how this reimbursement bears any relation to this Court's decision to convert this case from Chapter 11 to Chapter 7. *See* Big Elk's **Exhibit B** attached to this Response.

27. Third, Andrew Dorko Jr. testified at the January 7 Hearing that TMC did not receive any official offers from prospective capital partners to join forces with Debtor, refinance or pay off Big Elk Loans, or properly capitalize Debtor operations. It is a correct statement for Big Elk to say TMC failed to provide Big Elk with alternatives to refinance and recapitalize TMC. Mere

conversations with potential sources of repayment are not offers or real refinance efforts. Rather, it is speculation and conversation.

28. Even if Debtor's allegations were true, the Chapter 7 Trustee can pursue any appropriate action against Big Elk if warranted. Indeed, none of Debtor's new allegations affect Debtor's viability to reorganize under Chapter 11. TMC has not been profitable for years and has not shown an ability to survive independently without the help of PPP Loans, the $10,000,000.00 unpaid loan from Big Elk or handouts. The Chapter 7 Trustee has already changed the locks to the property, and all employees have been laid off. If the Debtor had a viable plan of reorganization, the Debtor should have informed the Court at the January 7 Hearing or filed such with this Court at any time prior to that hearing.

## **CONCLUSION**

29. At best, this Motion is an attempt to re-argue Debtor's position from the December 17 Hearing and the January 7 Hearing. The Court already determined that a Chapter 7 liquidation is in the best interest of the creditors and should not re-think its prior decision.

30. Debtor will not take responsibility for its business failures. The Debtor is now blaming its problems and this Court's decision to convert this bankruptcy case on Big Elk (who holds a $10 million final judgment against TMC), which is not credible.

**WHEREFORE**, Big Elk respectfully requests that the Court grant the relief requested in this Motion, enter an order denying Debtor's Motion for New Trial or Reconsideration of Order Converting Chapter 7 Case, and such other and further relief which this Court deems appropriate.

**RESPECTFULLY SUBMITTED** this 5th day of February 2021.

/s/ Justin M. Luna
Justin M. Luna, Esq.
Florida Bar No. 0984469
jluna@lathamluna.com

Daniel A. Velasquez, Esq.
Florida Bar No. 0098158
dvelasquez@lathamluna.com
**LATHAM, LUNA, EDEN & BEAUDINE, LLP**
bknotice1@lathamluna.com
111 N. Magnolia Ave., Suite 1400
Orlando, Florida 32801
Telephone: (407) 481-5800
Facsimile: (407) 481-5801
*Attorneys for Big Elk Funding, LLC*

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION
# www.flmb.uscourts.gov

**In re:**

**TOTAL MARKETING CONCEPTS, INC.,**  CASE NO. 6:20-bk-06544-LVV

    **Debtor.**

_____/  **CHAPTER 11**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 5th Day of February 2021, a true copy of the foregoing has been furnished either electronically and/or by U.S. First Class, postage prepaid mail to: Total Marketing Concepts, Inc., **c/o Aldo G. Bartolone, Jr., Esq.**, Bartolone Law, PLLC, 1030 N. Orange Avenue, Suite 300, Orlando, Florida 32801, aldo@bartolonelaw.com; all parties listed on the 1007-2 Parties-in-Interest list; all parties who receive notice via CM/ECF in the ordinary course; **Miriam G. Suarez, Esq.**, Office of the United States Trustee, 400 W. Washington Street, Suite 1100, Orlando, Florida 32801, Miriam.g.suarez@usodj.gov.

                                  /s/ Justin M. Luna

                                  Justin M. Luna, Esq.

# EXHIBIT "A"

## WRITTEN CONSENT RESOLUTION OF SOLE SHAREHOLDER AND DIRECTOR OF TOTAL MARKETING CONCEPTS, INC.

**ANDREW DORKO, JR.,** as the sole shareholder and director of **TOTAL MARKETING CONCEPTS, INC.**("TMC"), hereby approves the following action for TMC by written consent:

The following shall serve as the officer of TMC designated below until a successor assumes the office:

        Michael Nealer        President

All employees and officers, excepting the CEO, shall report to Michael Nealer.

**TOTAL MARKETING CONCEPTS, INC.**

_____

| | |
|---|---|
| Effective: | November 13, 2019 |
| By: | Andrew Dorko, Jr. |
| As its: | Sole Shareholder and Director |

# EXHIBIT "B"

**From:** Laurie Eckholm <laeckholm@aol.com>
**Sent:** Monday, April 20, 2020 10:49 AM
**To:** Michael Nealer
**Cc:** 'Bill Eckholm'
**Subject:** Monies

Hi Michael,

Below is the list of monies paid out to TMC last week, total $62,901.48. As I understand it, you are repaying Big Elk this week. If you have any questions, please let me know.

| Date | Amount | Description |
|---|---|---|
| 4/15/20 | 48,500.00 | Wire |
| 4/15/20 | 1,568.60 | Amex card Lasiter-Ware |
| 4/15/20 | 3,121.01 | Amex card GoodHire |
| 4/15/20 | 9,051.87 | Amex card PC Liquidations - computers |
| 4/16/20 | 660.00 | Amex card Nationwide Marketing |
| | 62,901.48 | |

Thanks!
Laurie

**Total Control Panel**                                                                                         Login

To: jluna@lathamluna.com          Remove this sender from my allow list

From:
michael.nealer@premierstrategygroup.com

*You received this message because the sender is on your allow list.*